[Crim. No. 1220.   Third Appellate District.—September 29, 1932.]

THE PEOPLE, Respondent, v. FRANK GUITEREZ, Appellant.

Barcroft & Barcroft for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

THOMPSON (R. L.), J.—The defendant was convicted under section 288 of the Penal Code of lewd and lascivious conduct toward a child. On appeal it is contended the verdict is not supported by competent evidence; that the defendant was coerced to furnish evidence against himself by unwillingly submitting to a physical examination; that the prosecuting officer and the trial judge were guilty of prejudicial misconduct, and that the court erred in giving to the jury and in refusing to give certain instructions.

It is conceded the child, Julia Donati, who was but five years of age, was incompetent to testify as a witness. At the trial it was not possible to persuade her to answer ques-

tions. After a fruitless effort to induce her to speak, the court said: "Let the record show the court finds that the child is evidently nothing but a mere baby yet, . . . and does not respond to the court's questions. . . . She does not appear to understand what the proceedings are all about." Thereupon the child's mother was sworn and testified to circumstances which were related to her by the child constituting lewd and lascivious conduct on the part of the defendant. It is now contended this testimony of the mother is hearsay evidence and incompetent, and that no other substantial evidence supports the verdict.

It is conceded that the person to whom a child, who is too young to become a competent witness, has made complaint concerning a recent assault upon her, may testify regarding the fact that such complaint was made. (*People* v. *Ewing,* 71 Cal. App. 138 [234 Pac. 917, 919].) But this rule does not authorize the hearsay statement of circumstances concerning the attack which may have been related by the child. It is said in the Ewing case, *supra:* "The rule does not extend to the details of the acts complained of." In the present case the statement which was related by the mother of the child does include circumstances and details which, under a proper objection, would be inadmissible. Harmful as this evidence may have been, we are satisfied from a careful examination of the transcript its exclusion was waived by failure to object to the evidence or move to strike it from the record. The controversy between counsel regarding the admission of evidence of this nature consumes several pages of the transcript. Objections to several questions which were propounded by the prosecuting officer were sustained, and testimony thus adduced was stricken from the record. Respective counsel and the court seem to have recognized the correct limitation of the rule as above stated. It is difficult to distinguish the exact dividing line between competent evidence of the *complaint* of an infant child regarding a recent assault and the incompetent details thereof. This led to numerous objections and several orders striking out evidence from the record. The only statement made by the mother regarding the complaint of the child which remains in the record, with the exception of the evidence which was brought out by the defendant on cross-examination, is in

reply to the following question: "Go ahead and state, now, what she told you." No objection was offered to this question. A portion of the answer is competent under the rule above stated. The balance of this answer regarding certain details of the affair may be conceded to be incompetent. The incompetent portion of this answer was waived by failure to object to the question or move to strike it from the record. (*People* v. *Gasser,* 34 Cal. App. 541 [168 Pac. 157].)

Error is assigned in permitting a witness to testify that the defendant admitted he was afflicted with gonorrhea, without first proving that the statement was voluntarily made. The alleged admission was material. It tends to corroborate the child's accusation that he was guilty of lewd conduct toward her. His acts resulted in communicating to her a venereal disease. The examination by a physician soon after the commission of the alleged acts disclosed the fact that the child was also afflicted with the same disease. The acknowledgment on the part of the defendant was not a confession of guilt. It was a mere admission of his physical condition which might tend to show the possibility of his guilt. The defendant, both in court and out of court, asserted his innocence of the charge of lewd and lascivious conduct. This assignment of error is without merit.

It is the established rule that the admission of a fact which does not itself involve criminal intent, and which does not amount to a confession of guilt, may not be excluded from the evidence merely for lack of proof that it was voluntarily made. (*People* v. *Peete,* 54 Cal. App. 333, 354 [202 Pac. 51].)

It is asserted the defendant was compelled to become a witness against himself contrary to the provisions of section 688 of the Penal Code by adducing evidence of the result of a physical examination which was alleged to have been conducted by a physician without the defendant's consent. This contention is without merit for the reason that it satisfactorily appears the defendant voluntarily submitted to the examination. Independent of the examination the defendant admitted he was afflicted with gonorrhea. He became a witness at the trial in his own behalf and did not deny that he then suffered from that disease. It is

true the defendant was taken by a peace officer to Dr. Stone, who asked him if he had ever had that particular disease. To this inquiry the defendant replied: "I have got it now." The doctor then told him that he was charged with attacking a little girl and conveying to her the disease. He then asked the defendant: "Are you willing to submit to a physical examination?" The defendant replied: "I do not object to an examination at all." The physical examination followed with the result that the defendant was found to be afflicted with "a bad case of organism, known as gonococcus". The defendant testified regarding this examination that the officer "took me up to Dr. Stone, and had me examined, . . . just told me I had to be examined, never asked me if I was willing". This raises a conflict as to whether the defendant voluntarily submitted to the examination. ▮ The burden was upon the defendant to show that he was coerced into submitting to the examination. The question as to whether he voluntarily submitted to the examination was a problem for the determination of the jury under proper instructions. ▮ Evidence of the result of a physical examination of an accused person, may not be excluded in a criminal action on the ground that it compels him to become a witness against himself, where the examination is conducted with the consent of the accused. (16 C. J. 567, sec. 1099.) From a careful reading of the record it satisfactorily appears that the defendant voluntarily submitted to a physical examination by the doctor. Independently of the examination, he also admitted he was afflicted with gonorrhea. The result of the physician's examination was therefore merely cumulative.

▮ Error is assigned by the appellant for failure to charge the jury from written instructions or to "endorse and sign" the instructions which were given, in the manner provided by section 1127 of the Penal Code.

The court requested respective counsel to stipulate that oral instructions might be given to the jury. After a colloquy on this subject, the attorney for the defendant said: "We will not stipulate." The court then said: "Let the record show that the court proceeds to read such instructions as seems necessary to give from a written manuscript which is before it." The court then proceeded to read to the jury elaborate instructions containing all the essential

elements of the offense. At the request of the court these instructions were transcribed by the court reporter and filed as a record in the case. This written charge which was given by the court was not signed by the judge. It is contained in the transcript on appeal and is certified by the judge as the correct charge which was given to the jury. Twelve other proposed instructions were submitted in writing to the court by the defendant. Each of these additional instructions was signed and indorsed by the judge as refused on the ground that they were "covered by other instructions".

Section 1127, *supra,* provides in part:

"All instructions given . . . shall be in writing, unless both parties request the giving of an oral instruction, or consent thereto, and when so given orally, all instructions must be taken down by the phonographic reporter. . . . Upon each charge presented and given or refused, the court must indorse and sign its decision."

The instructions which were given to the jury in the present case, as well as those which were refused, were in writing. They were transcribed by the reporter and certified by the judge. There is no controversy regarding the exact language of the instructions which were given and of those which were refused. The only requirement of section 1127, *supra,* which was not fulfilled, is that the judge failed to sign his name to the charge which was given. The purpose of the statute requiring all instructions to be in writing, and designating the portions thereof which are given, refused or modified, is to preserve for review an exact record of the charge which is given. This was done in the present case. The accuracy of the record of the charge in this case is just as certain as though every paragraph of the written manuscript from which the judge read had been separately signed by the judge. While the preserving of an accurate record in writing of all instructions given by the court and refused is required by the statute and is mandatory, unless both parties consent to the giving of oral instructions, we are of the opinion the mere omission of the judge's signature is not reversible error, provided the record fully discloses exactly what transpired with respect to the refusal or modification of instructions and the charge which was actually given. The defendant was not prejudiced by the omission

of the judge's signature or the procedure which occurred with respect to the court's charge.

The failure of the judge to sign his name to the written charge which was given in this case is a mere harmless error in procedure which is covered by the provisions of article VI, section 4½, of the Constitution, which provides in part:

"No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

We are satisfied there was no miscarriage of justice in the present case.

■ The appellant charges error in the refusal of the court to give to the jury the following proposed instruction: "The defendant has offered himself as a witness in this case in his own behalf. You are instructed that he has the legal right so to do and that you shall consider his evidence the same as that of any other witness brought before you. The mere fact that he is the defendant in the action should not prejudice his testimony in your minds, but you should weigh the same in the same manner as you weigh the testimony of the other witnesses who have testified in this case."

The refusal of this instruction did not constitute error. The essential portions of this proposed instruction were included in the general charge of the court which was given to the jury. The court charged the jury that: "It is the duty of each of you to consider and weigh *all the evidence in the case,* and from such evidence to determine, if you can, the question of guilt or innocence of the defendant."

The court also instructed the jury as follows: "The weight that should be given to the testimony, or the credit that you shall give to *any of the witnesses in the case* . . . are peculiarly within your province, which you, as jurors, under your oaths, must determine for yourselves."

It is held improper to give an instruction which singles out a particular witness to enhance or detract from the weight of his testimony or the credibility to which he is entitled. Where the substance of a rejected instruction is covered by others which are given to the jury, the defendant may not complain. (*People* v. *Brown,* 71 Cal. App. 181 [235 Pac. 72].) In the case of *People* v. *Gordon,* 78 Cal. App. 167 [248 Pac. 289], it was held the defendant was not prejudiced

by the refusal to give an instruction to the effect that he had a right to become a witness in his own behalf and that his testimony should not be discredited merely because he was the defendant, since the jury was elsewhere correctly instructed generally regarding the weight of evidence and the credibility of witnesses.

The instruction respecting the statement of the child, Julia Donati, appears to be a correct declaration of the law. It is as favorable to the defendant as he was entitled to. It contains a warning against the "extreme liability of a child to repeat what she had heard". This instruction was not prejudicial to the defendant.

Nor do we think there was prejudicial misconduct in the rulings of the court or the conduct of the prosecuting officer which are assigned by the appellant as erroneous. These assignments are too numerous and involved to merit detailed discussion.

We fully realize the danger of convicting a man who is accused of lewd conduct toward an infant child upon her uncorroborated statement, particularly when the child is too young to become a competent witness, and her evidence is adduced from the story which she relates to her mother. Upon the contrary, we also realize the futility of the law which would afford no protection to an infant child under such unfortunate circumstances. In the present case the statement of the child which was related by the mother is supported by certain corroborating circumstances. The defendant was twenty-one years of age. He lived with his mother and stepfather near the Donati home in Madera for about a year. Julia Donati frequently visited the Guitcrez home and associated with the defendant. The defendant also visited in the Donati home. He was afflicted with gonorrhea. Within about a week after the child complained to her mother about his lewd conduct toward her it was discovered the child was also afflicted with the same venereal disease. A reputable medical expert witness testified that nearly ninety-nine per cent of those individuals who are afflicted with this loathsome disease incur it through sexual communication. These circumstances furnish ample evidence to support the judgment. There does not appear to have been a miscarriage of justice.

The judgment and the order are affirmed.

Preston, P. J., and Plummer, J., concurred.